**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher and Arden Morley, ) | No. CV 04-1874-PCT-ECV |
| )  Plaintiffs, ) | **ORDER** |
| ) vs. ) | |
| ) Lorre Smith, et al., ) | |
| )  Defendants. ) | |

Pending before the court is a Motion for Summary Judgment of Defendants Joy Peel-Pohto and Chris Pohto ("Defendants"). Doc. #134.[1] The motion, filed on February 2, 2007, is supported by a Separate Statement of Facts. Doc. #135. Plaintiffs filed a Response to Defendants' Motion for Summary Judgment on April 2, 2007. Doc. #158. A Statement of Facts was attached to the Response. Defendants filed a Reply on April 17, 2007.[2]

Defendants also filed an Objection to Plaintiffs' Statement of Facts on April 12, 2007. Doc. #165. Plaintiffs filed a Response to Objection of Defendants Pohtos on May 2, 2007.

---

[1] Defendants James and Lorre Smith have also filed a Motion for Summary Judgment which will be addressed in a separate order.

[2] Defendants and Plaintiffs have requested an oral argument on the motion. The court has the discretion to grant or deny a request for oral argument. See LRCiv. 7.2(f). Here, upon review of the motions, the responses and replies, the court finds that an oral argument would not assist the court in reaching a decision. The written filings provide sufficient information for the court to issue a ruling.

1 Doc. #175.  Defendants filed a Reply in Support of Their Motion to Strike Plaintiffs'
2 Exhibits on May 11, 2007, even though they never filed a motion to strike Plaintiffs'
3 exhibits.  Presumably, the reply is in support of the Objection at Doc. #165.
4       On May 1, 2007, Plaintiffs filed a "Motion to Strike Exhibits and Therefore Reply Re:
5 Defendant Photos'[sic] Reply Re: Motion for Summary Judgment.".  Doc. #171.  The next
6 day, Plaintiffs filed a "Motion to Strike Exhibits and Therefore Reply Re: Defendant Photos'
7 [sic] Reply Re: Motion for Summary Judgment; Motion to Extend Discovery and Motion for
8 Rule 56(f) Relief."  Doc. #177.  Defendants then filed a Response to Plaintiffs' Motion to
9 Strike on May 3, 2007.  Doc. #180.  The following day, on May 4, 2007, Plaintiffs filed an
10 "Amended Motion for Rule 56(f) Relief; Motion to Strike and Motion to Extend Discovery
11 Deadline (Supplemental Response to Objection of Pohtos)." Doc. #181.  Defendants filed
12 a Response to Plaintiffs' Amended Motion on May 10, 2007.  Doc. #189.  Then on May 11,
13 2007, Plaintiffs filed a "Reply to Defendants Pohtos Response to Plaintiff's Motion to Strike
14 Pohto Affidavits in Support of Their Reply to Their Motion for Summary Judgment."  Doc.
15 #190.  Seven days later, on May 17, 2007, Plaintiffs filed another "Reply Re: Pohtos
16 Response to Plaintiffs Amended Motion for Rule 56(f) Relief; Motion to Strike and Motion
17 to Extend Discovery Deadline."  Doc. #197.  Five days after that, Plaintiffs filed yet another
18 reply titled "Reply Re: Pohtos (Second) Response to Plaintiffs Amended Motion for Rule
19 56(f) Relief; Motion to Strike and Motion to Extend Discovery Deadline."  Doc. #200.

**DISCUSSION**

21 **A.  Summary Judgment Legal Standard**

22       A court must grant summary judgment if the pleadings and supporting documents,
23 viewed in the light most favorable to the non-moving party, "show that there is no genuine
24 issue as to any material fact and that the moving party is entitled to judgment as a matter of
25 law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
26 Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  The materiality
27 requirement means "[o]nly disputes over facts that might affect the outcome of the suit under
28 the governing law will properly preclude the entry of summary judgment."  Anderson v.

1 Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Substantive law determines which facts are
2 material. Anderson, 477 U.S. at 248. The dispute must also be genuine, meaning "the
3 evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
4 The court determines whether there is a genuine issue for trial but does not weigh the
5 evidence or determine the truth of matters asserted. Jesinger, 24 F.3d at 1131.

6       The party seeking summary judgment bears the initial burden of informing the court
7 of the basis for its motion and identifying those portions of the pleadings, depositions,
8 answers to interrogatories, and admissions on file, together with the affidavits, if any, which
9 it believes demonstrate the absence of any genuine issue of material fact. Celotex, 477 U.S.
10 at 323 (citations omitted). A principal purpose of summary judgment is "to isolate and
11 dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment
12 is appropriate against a party who "fails to make a showing sufficient to establish the
13 existence of an element essential to that party's case, and on which that party will bear the
14 burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960,
15 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has
16 the burden of proof at trial. Celotex, 477 U.S. at 323.

17       Furthermore, the party opposing summary judgment "may not rest upon the mere
18 allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing
19 that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus.
20 Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Brinson v. Linda Rose Joint
21 Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is
22 sufficient evidence favoring the non-moving party. Anderson, 477 U.S. at 249. If the
23 evidence is merely colorable or is not significantly probative, summary judgment may be
24 granted. Id. at 249-50.

25
26
27 **B.**     **Trade Libel**
28

1  A claim for trade libel requires a plaintiff to prove that the defendant intentionally
2 published an injurious falsehood disparaging the quality of the plaintiff's property and that
3 such publication resulted in pecuniary loss to the plaintiff. See Gee v. Pima County, 126
4 Ariz. 116, 612 P.2d 1079 (1980). Defendants contend that they are entitled to summary
5 judgment on this claim because they were not involved in the drafting, signing or submission
6 of the complaint to TICA. Alternatively, Defendants argue that the publication of the
7 complaint was conditionally privileged. Plaintiffs argue that Defendants acted in concert
8 with the other defendants in this action pursuant to A.R.S. § 12-2506. They further argue
9 that Defendants abused and exceeded the scope of the conditional privilege.

10 As in its previous order granting summary judgment to the Alessio and Todice
11 defendants, the court again finds that the conditional privilege applies to the trade libel claim
12 against Defendants. See Unelko Corp. v. Rooney, 912 F.2d 1049, 1058 (9th Cir. 1990)
13 (Trade libel is "subject to the same first amendment requirements that govern actions for
14 defamation."). Judge Carroll, in his order dismissing Plaintiffs' defamation claims cited the
15 applicable law in Arizona regarding the conditional privilege and explained how it applies
16 in this case. Doc. #10 at 8-10. He found that the privilege applied because "Defendants
17 acted pursuant to their interest as TICA members in protecting the integrity of the
18 organization." Id. at 10. This court adopts the analysis and concludes that the privilege
19 applies to the trade libel claim. Plaintiffs have presented no authority to argue otherwise.

20 Regarding Plaintiff's contention that Defendants acted in concert with other
21 defendants pursuant to A.R.S. § 12-2506, Plaintiffs have not shown how that has any bearing
22 on the application of the conditional privilege. Moreover, the elements of "acting in concert"
23 under A.R.S. § 12-2506(F)(1) are not satisfied. Plaintiffs have not presented evidence that
24 Defendants entered a "conscious agreement to pursue a common plan or design to commit
25 an intentional tort and actively taking part in that intentional tort." Defendants' participation,
26 the extent of which Plaintiffs have not demonstrated, in submitting a complaint to TICA over
27 concerns about Plaintiffs' cat breeding practices does not satsify the definition. Thus, to the
28

1  extent Plaintiffs are trying to claim that "acting in concert" defeats the conditional privilege,
2  that argument is without merit.

3  Plaintiffs claim that Defendants abused and exceeded the scope of the privilege.
4  "Once a defendant demonstrates that a conditional privilege may apply, the plaintiff may
5  then prove an abuse of that privilege either by proving publication with 'actual malice' or by
6  demonstrating excessive publication." Green Acres Trust v. London, 141 Ariz. 609, 616, 688
7  P.2d 617, 624 (1984) (citations omitted). To show actual malice, the plaintiff must
8  demonstrate that the defendant made the statement "knowing its falsity or actually
9  entertaining doubts about its truth." Id. Excessive publication is established by
10 demonstrating "publication to an unprivileged recipient not reasonably necessary to protect
11 the interest upon which the privilege is grounded." Id.

12 Plaintiffs claim that "they have demonstrated that there was actual malice by the
13 Defendants in the form of an e-mail, containing a petition against Arden Morley that was
14 disseminated which made false and damaging statements regarding the Plaintiffs' business."
15 Doc. #158 at 6. They claim that the e-mail "literally questioned the honesty of Arden
16 Morley" and that it "literally questions the integrity of the Plaintiff in regards to her
17 business." Plaintiffs quote from the e-mail, yet fail to cite to their statement of facts or any
18 other source to show where the e-mail can be found. Plaintiffs appear to be referring to one
19 of the e-mails attached at Exhibit C to their response. That e-mail was not sent to or from
20 Defendants. Even if Defendants at some point received, sent or forwarded the referenced e-
21 mail, there is nothing about it that shows evidence of malice. Plaintiffs cite nothing else in
22 their response as evidence of malice. Thus, they have not shown that the privilege was
23 abused on that basis.

24 Plaintiffs next argue that Defendants abused the privilege by publishing it to
25 individuals outside of TICA. Plaintiffs again refer to an e-mail for which they fail to provide
26 a citation. It is not the court's obligation to search through the hundreds of documents that
27 have been submitted in this case to find evidence supporting Plaintiffs' arguments. Plaintiffs
28 fail to show that these Defendants had anything to do with distributing this unidentified e-

1  mail. Moreover, even if Defendants participated in distributing the e-mail to individuals
2  outside of TICA, the privilege would not be overcome. The interest in protecting the
3  particular breed of cat at issue is not necessarily limited to TICA members. Plaintiffs have
4  the burden to show that publication was made "to an unprivileged recipient not reasonably
5  necessary to protect the interest upon which the privilege is grounded." Green Acres Trust,
6  141 Ariz. at 616, 688 P.2d at 624. They have not done so.

7  Lastly, Plaintiffs' contention that Defendant Joy Peel-Pohto also "made comments"
8  to non-members of TICA about Plaintiffs and their cats is insufficient to show she exceeded
9  the scope of the privilege. Plaintiffs have failed to show that she was not acting to protect
10 the interest upon which the privilege is based.

11 For these reasons, the court finds that the conditional privilege applies here and
12 Plaintiff has not shown that it was abused. Accordingly, summary judgment will be granted
13 in favor of Defendants on the trade libel claim.

14 **C.      Tortious Interference With Prospective Economic Advantage**

15 A claim for tortious interference with prospective economic advantage requires: (1)
16 the existence of a valid contractual relationship or business expectancy; (2) the defendant's
17 knowledge of the relationship or expectancy; (3) improper and intentional interference by the
18 defendant inducing or causing a breach or termination of the relationship or expectancy; and
19 (4) resultant damage to the party whose relationship or expectancy has been disrupted.
20 Miller v. Servicemaster, 174 Ariz. 518, 521, 851 P.2d 143, 146 (1992). Defendants contend
21 among other things that Plaintiffs cannot satisfy the fourth element of the claim, which
22 requires evidence of damages resulting from the interference.

23 Defendants cite to Plaintiff Arden Morley's deposition to establish that Defendants
24 allegedly interfered in only two transactions, one with Rahman Sayeed and the other with
25 Joanna Glowacki. Defendants' Statement of Facts ("DSOF") (Doc. #135), Exh. G at 56-61.
26 Regarding Mr. Sayeed, Ms. Morley testified in her deposition that Mr. Sayeed eventually
27 purchased a cat from her but it was for $1,000 less than the one he was originally going to
28 purchase before Defendants interfered. Id. at 60-61. Additionally, Ms. Morley testified that

- 6 -

1 she sold the first cat to someone else for $4,500, which is $500 less than what Mr. Sayeed
2 was going to pay for it. Id. at 70. Had Mr. Sayeed walked away, Plaintiffs would have been
3 damaged in the amount of $500. However, Mr. Sayeed purchased a different cat from
4 Plaintiffs. Thus, the alleged interference resulted in Plaintiffs selling two cats instead of just
5 the original one to Mr. Sayeed.

6 Regarding Ms. Glowacki, Ms. Morley testified that she decided not to purchase a cat
7 after interference from Defendants. DSOF, Exh. G at 89. Ms. Morley conceded however,
8 that the cat was sold to someone else. Id. Ms. Morley could not remember how much the
9 cat sold for, nor how much time passed before it was sold. Id.

10 In their response, Plaintiffs present no evidence that Defendants interfered with any
11 other transactions or business expectancies other than those with Mr. Sayeed and Ms.
12 Glowacki. Plaintiffs attach to their response affidavits from Mr. Sayeed and Ms. Glowacki.[3]
13 Doc. #158, Exh. D, G. The affidavits explain Defendant Joy Peel-Pohtos' involvement in
14 the transactions on which the tortious interference claim against her and her husband is
15 based. Id. However, the affidavits, in conjunction with Ms. Morley's deposition testimony,
16 fail to present evidence of damages resulting from the alleged interference.

17 Plaintiffs state in their response that "while it is true that Mr. Sayeed purchased a
18 different cat from Plaintiffs, this cat was purchased at a different time when restrictions were
19 placed upon the registration of Arden Morley's cats due to the false and malicious allegations
20 made to TICA by the defendants. As a result, this cat was sold at a much lower price than
21 that which a kitten of such breeding would normally sell for." Doc. #158 at 9. As is the case
22 throughout Plaintiffs' response, they cite nothing in the record to support these assertions.
23 Regardless, this purported evidence of damages did not result from the interference with Mr.
24 Sayeed's transaction, as described in his affidavit. For this claim, Plaintiffs have to show that
25 the damage resulted from the interference, not from submitting the complaint to TICA.

---

[3] Although neither affidavit is properly notarized, each one satisfies the requirements of 28 U.S.C. § 1746 and can therefore be considered by the court.

1 Plaintiffs appear to be mixing up their claims. There is no evidence that Mr. Sayeed knew 2 of any complaint to TICA such that it interfered with his transaction. The element of 3 damages Plaintiffs must prove for this cause of action must come from the interference set 4 forth in Mr. Sayeed's affidavit.

5 Likewise, the affidavit from Ms. Glowacki in conjunction with Ms. Morley's 6 deposition, provide no evidence of damages resulting from the interference with her 7 transaction. Plaintiffs' response offers no other evidence relating to damages from the 8 Glowacki transaction.

9 Lastly, Plaintiffs' contend that "they cannot know" about the other prospective 10 purchasers who did not contact them because of statements by Defendants. They claim 11 however that these are valid business expectations that must be considered. This aspect of 12 the claim is nothing more than pure speculation and is insufficient to defeat a motion for 13 summary judgment.

14 Based on the foregoing, Defendants have demonstrated that Plaintiffs are without 15 sufficient evidence to support the damages element of their tortious interference with 16 prospective economic advantage claim. Accordingly, the court will grant Defendants' 17 request for summary judgment on that claim.

18 **D.     Intentional Infliction of Emotional Distress**

19 A claim for intentional interference of emotional distress requires proof of four 20 elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme 21 and outrageous; (3) there must be a causal connection between the wrongful conduct and the 22 emotional distress; and (4) the emotional distress must be severe. Midas Muffler Shop v. 23 Ellison, 133 Ariz. 194, 197, 650 P.2d 496, 499 (App. 1982). "A plaintiff must show that the 24 defendant's actions were 'so outrageous in character and so extreme in degree, as to go 25 beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable 26 in a civilized community.'" Mintz v. Bell Atlantic Systems Leasing Intern., Inc., 183 Ariz. 27 550, 554, 905 P.2d 559, 563 (App. 1995). "'[I]t is for the court to determine whether on the 28 evidence severe emotional distress can be found.'" Midas Muffler Shop, 133 Ariz. at 197, 650

1  P.2d at 499 (quoting <u>Venerias v. Johnson</u>, 127 Ariz. 496, 499, 622 P.2d 55, 58 (App. 1980).
2  Additionally, the court is to determine whether the acts complained of are sufficiently
3  extreme and outrageous. <u>Mintz</u>, 183 Ariz. at 554, 905 P.2d at 563. The issues goes to a jury
4  only if reasonable minds could differ on whether the conduct was sufficiently extreme or
5  outrageous. <u>Id.</u>

6        Defendants contend that Plaintiffs have failed to present sufficient evidence to
7  establish severe emotional distress. They further argue that the conduct alleged against them
8  was not extreme and outrageous. Plaintiffs claim that Defendants' conduct, when considered
9  in conjunction with other defendants' conduct, is sufficiently extreme and outrageous for the
10 issue to go to a jury.

11       Defendants state that Plaintiffs' claim for intentional infliction of emotional distress
12 claim is based on the statements Joy Peel-Pohto made to Joanna Glowacki and Rahman
13 Sayeed. Both individuals stated in affidavits that Ms. Peel-Pohto told them Plaintiffs' cats
14 were not safe around children. Doc. #158, Exh. D, G. In addition, Ms. Glowacki said that
15 Ms. Peel-Pohto told her Plaintiffs had falsified registration documents for some of their cats,
16 thus misleading potential buyers. Doc. #158, Exh. G. Defendants contend that even if true,
17 such comments do not rise to the level of extreme and outrageous conduct to support an
18 intentional infliction of emotional distress claim. Defendants further point out that Plaintiff
19 Arden Morley admitted in her deposition that some of the registrations she submitted to
20 TICA were incorrect. DSOF, Exh. G at 45-46.

21       In their response on this issue, Plaintiffs argue that Defendants' conduct was
22 sufficiently extreme and outrageous. First, they contend that this issue is a question of fact
23 to be decided by the trier of fact. However, as the above-cited authority demonstrates, a
24 court determines whether the acts are sufficiently extreme or outrageous and the issue only
25 goes to a jury if reasonable minds could differ.

26       Second, Plaintiffs argue that the court must consider all the named defendants'
27 conduct because they were all acting in conjunction with each other pursuant to A.R.S. § 12-
28 2506. As explained above, Plaintiffs have presented no evidence of a conscious agreement

- 9 -

1 among all the defendants to commit an intentional tort. The court will therefore consider
2 only the actions of these Defendants (Pohtos).

3 Third, Plaintiff's contend that Defendants' conduct qualifies as extreme and
4 outrageous. As they did throughout their response, however, Plaintiffs fail to direct the court
5 to specific documents in the record to support their contentions. They state that Defendant
6 Joy Peel-Pohto's "emails and conduct suggest that she was on a crusade to rid Arden Morley
7 from TICA at whatever cost was necessary," yet they cite nothing from the record to support
8 this assertion. Again, they apparently expect the court to sift through the hundreds of
9 documents attached to their response to find support.

10 Plaintiffs have failed to demonstrate that Defendants' conduct was extreme and
11 outrageous. Furthermore, in all the documents from the record that the court has reviewed,
12 it has found nothing that shows Defendants' conduct rose to the extreme level required for
13 this claim. Because the court finds that Plaintiffs have not shown extreme and outrageous
14 conduct by Defendants, it need not address the other elements of the claim. Defendants'
15 request for summary judgment on this claim will be granted.

16 **E.     Loss of Consortium**

17 A loss of consortium claim requires a plaintiff to demonstrate that he/she has suffered
18 "a loss of capacity to exchange love, affection, society, companionship, comfort, care and
19 moral support." Miller v. Westcor Ltd. Partnership, 171 Ariz. 387, 395, 831 P.2d 386, 394
20 (App. 1991) (citation omitted). Loss of consortium is a derivative claim such that "all
21 elements of the underlying cause must be proven before the claim can exist." Barnes v.
22 Outlaw, 192 Ariz. 283, 286, 964 P.2d 484, 487 (1998).

23 As the court has concluded above, Defendants are entitled to summary judgment on
24 the trade libel, tortious interference with prospective economic advantage, and intentional
25 infliction of emotional distress claims against them. Because no underlying claims remain
26 against Defendants, the loss of consortium claim cannot survive. Summary judgment for
27 Defendants will be granted on this claim as well.

28 **F.     Motions to Strike and for Rule 56(f) Relief**

1    Defendants' Objection to Plaintiffs' Statement of Facts and Plaintiffs' Motions to
2 Strike will be denied.  The court relied only on admissible evidence from deposition
3 transcripts and affidavits in deciding the summary judgment motion.  It did not rely on
4 unauthenticated e-mails or other inadmissible evidence.

5    Additionally, Plaintiffs requests for Rule 56(f) relief will be denied.  The parties have
6 had ample opportunity to conduct discovery in this case and Plaintiffs have failed to satisfy
7 the requirements for such relief.

8 **IT IS THEREFORE ORDERED:**

9    That the Motion for Summary Judgment of Defendants Joy Peel-Pohto and Chris
10 Pohto (Doc. #134) is **granted**; and

11    That Defendants Joy Peel-Pohto and Chris Pohto are dismissed from this action with
12 prejudice.

13 **IT IS FURTHER ORDERED:**

14    That Defendants' Objection to Plaintiffs' Statement of Facts (Doc. #165); Plaintiffs'
15 "Motion to Strike Exhibits and Therefore Reply Re: Defendant Photos'[sic] Reply Re:
16 Motion for Summary Judgment" (Doc. #171); Plaintiffs' "Motion to Strike Exhibits and
17 Therefore Reply Re: Defendant Photos' [sic] Reply Re: Motion for Summary Judgment;
18 Motion to Extend Discovery and Motion for Rule 56(f) Relief" (Doc. #177); and Plaintiffs'
19 "Amended Motion for Rule 56(f) Relief; Motion to Strike and Motion to Extend Discovery
20 Deadline (Supplemental Response to Objection of Pohtos)" (Doc. #181) are **DENIED**.

21    DATED this 21st day of June, 2007.

_____
Edward C. Voss
United States Magistrate Judge

- 11 -